The next case on for argument is Spencer v. Barr. Spencer v. Barr Mr. Schnitzer, that comes down, as I'm sure you know, if you, wherever that button is. It's shorter than prior counsel, it appears. No, no, we just want to make sure that Judge Winter can hear so that the mics correctly lined up. So thank you. Good morning, and may it please the Court. My name is David Schnitzer of Gibson, Dunn & Crutcher, pro bono counsel for Petitioner Churchill Andrews. This Court's 2017 decision in Harbin v. United States made clear that Mr. Andrews, a lawful permanent resident of three decades, never had a conviction for a deportable offense. And on top of that, there was never an obstacle to granting him cancellation of removal, the relief the immigration judge stated after examining the record it would have granted him in, quote, 15 seconds if thought legally available. We now know it was legally available. The Board committed reversible error in denying his prompt motion for relief based on Harbin. It is consistently found tolling should be granted when a petitioner promptly seeks reconsideration after a court ruling makes clear the applicant was previously denied relief due to a legal error. Well, wait, so an intervening change of law is what we're talking about here. There could be other legal errors that are not intervening changes of law. So are there cases in which the BIA has found equitable tolling to be appropriate in the face of an intervening change in law? Yes, Judge Sullivan, there certainly are. And as a preliminary point, I think while the cases and we have all used change in law as a convenient shorthand, as the Supreme Court noted and we noted in our reply brief, it's really a bit misleading because the law, the statute was never enacted, the statute was never amended. When the Court corrected the prior interpretations, it was declaring, quote, what the law had always been since Congress enacted it. An intervening change in case law. That is probably a more accurate way of referring to it, Your Honor. And yes, there are, as we've cited in our briefs, there are, we've cited about two dozen cases in showing instances where either they granted equitable tolling, usually in a situation where after the relevant change in case law, the petitioner acted much less promptly than did my client, Mr. Andrews, waiting sometimes months or years after that development to ask the Board for further relief. Or conversely, denied equitable tolling on the motion to reconsider, motion to reopen because of the very long delay, indicating that it would have granted it had that particular applicant done what Mr. Andrews did here, which was file within 28 days of the Harbin decision. And of those cases that you mentioned, how many involved somebody who had already been deported or been, had departed? At least 12, which are about half of them. And I would note that given the nature of the record, which are usually one- to two-page BIA decisions, in some of them it's frankly not exactly clear, but half of, fully half of them either specifically say that the individual was removed, or alternatively, they point out that the regulatory departure bar was operative as to the separate request for sua sponte relief, which would only be true had the person already been removed from the country. Thank you. That alone, that inconsistency with the Board's regular practice and the framework that it has repeatedly expressed is sufficient to grant the petition. But the Board compounded that error by denying relief in an unreasoned and conclusory one-page order that did not actually address the core of Mr. Andrews' motion, that being his request for equitable tolling. Mr. Andrews arrived as an LPR in 1982 at age 17. For three decades, he established himself here in New York. He paid his taxes. He got married to his high school sweetheart. He worked in the construction trades for the City of New York. His U.S. citizen wife is still here in New York, as are his children and his grandchildren, also citizens. In 2009, he was convicted of a drug offense in Brooklyn. That's the basis on which the government initiated removal. During that period, before the BIA and before this Court, he argued repeatedly that New York Penal Code 22031, under which he was convicted, was not a removal offense and was not a barred cancellation of removal. This Court and the BIA, and ultimately this Court, in an unpublished decision, disagreed, and he was ultimately removed after Anbanc was denied and he was removed to Guyana in 2014. Since then, he's continued pursuing the only remedies that were reasonably available, his State law remedies. He has consistently been diligent throughout the period that he's asking to be tolled, in fact, much more so than many of the other individuals that the Board has granted relief for. He took every step on this particular argument that he could reasonably have taken. Remarkably, no one disputes that after Harbin, Mr. Andrews' New York conviction was not a proper grounds for removal. It was not an aggravated felony. That was the direct holding of Harbin. And it was also, for the same reasons, not a controlled substance offense, which was the other grounds with which he was charged. And the government has not disputed that anywhere below or here. And for the same reason, there is no question that there was no obstacle to cancellation of removal because it was not an aggravated felony, which was the reason it was thought to be earlier on in the proceedings. So the relief, should we agree with you, that you would have us enter is vacate the decision of the BIA and remand for further proceedings consistent with? We would ask in the first instance that the Board vacate and remand, that the Board grant, that you grant the petition and vacate with instructions to grant the motion to reopen and terminate proceedings on the basis that he was not removable in the first place or that cancellation should have been granted. Well, I mean, I thought you were saying that the Board didn't give an adequate explanation as to why equitable tolling wouldn't be appropriate. Don't we have to ask them to make that finding? We don't, Your Honor, because, as I'm sure, as obviously the Court knows, it doesn't remand for futile decisionmaking. And we submit that on the basis of its track record in all of these cases, that even were it to attempt to provide an explanation and engage in the analysis, it would nonetheless be arbitrary and capricious to deny him equitable tolling under these facts, which are not disputed on the record. Robert. Having already granted equitable tolling and the relief that he is seeking here to other Petitioners? Exactly, Judge Hall. In fact, and to Petitioners with — So the Board has consistently looked at two questions when — in these equitable tolling cases. It has looked at has there been an intervening case law which would completely change the landscape, making the person either not removable at all or open up a possibility of a discretionary relief such as cancellation. And it has looked at then was the person diligent either during the time they asked to be told before the decision and how promptly did they ask afterwards. Those are pretty simple, straightforward, factual considerations here which are not disputed on this record. And in the vast majority of the other cases, the individual waited much, much longer and was still granted relief. Mr. Andrews acted within 30 days, which is the shortest possible relevant time period, after the Court announced Harbin. So if equitable tolling is to be granted in any circumstances, and this Court has indicated that equitable tolling does apply to motions to reopen in the Luna case, for example, among others, then this is the case where it would have to apply both as a matter of this Court's law and the BIA's practice. Well, I mean, wouldn't it be easier to just let the BIA decide whether there's some differences that are worth identifying and articulating? Is there a downside to just remanding for proceedings? It would certainly be an additional infestment of this, of the Board's, you know, of the Board's resources, potentially this Court's recess, this Court's resources. And in the meantime, Mr. Andrews is still in Guyana where he was deported on the basis of a conviction that was not actually a removable offense. So we would submit that in light of the factual record here, which is not disputed, that there is no value in asking the Board to go through an exercise that can only have one legally correct and upholdable outcome. Thank you, Mr. Schnitzer. You've reserved some time for rebuttal. Thank you, Your Honor. Ms. Browning. Thank you, Your Honor. I'm even shorter. May it please the Court, Rachel Browning for the U.S. Attorney General. This case ended in 2013 when this Court upheld the agency's determination that Petitioner was removable as charged and not entitled to relief or protection from removal. Given Petitioner's subsequent and lawful removal from the United States and in the interest of finality, the Board's denial of his motion filed four years later was not an abuse of its broad discretion, and the Court therefore should deny the petition for review. Well, doesn't there have to be some explanation as to why other people in the exact same situation were treated differently? Well, first, Your Honor, I would say that those people were not in the exact same situation. Why not? First of all, in several of the cases that Petitioner cite, all of which are unpublished, the departure bar was not in effect. In many of the cases, the Board doesn't address equitable tolling at all. What Mr. Schnitzer said is that 12 people had already been removed. They were already gone. So the departure bar would apply for them. Some of those aren't Second Circuit cases, Your Honor. So the impediment, I mean, this Court still applies, does not apply the departure bar to statutory motions that are untimely. Right. Statutory motions. It does continue to apply it to regulatory motions. Therefore, the Board — We're talking about a statutory motion, right? This is a statutory motion. Only if the Court accepts the Petitioner's suggested broad application of the doctrine of equitable tolling, which it has never extended as far as they're requesting. This Court has applied the doctrine of equitable tolling in the immigration context solely to cases involving ineffective assistance of counsel. No, I get what this Court has done. What Mr. Schnitzer is saying is that your agency has exercised discretion to apply equitable tolling in circumstances just like this. And it has the discretion to do so, Your Honor, but it doesn't mean that it has to. But it can flip a coin and decide some will and some won't get equitable tolling? The Board decides these cases on a case-by-case basis. I mean, they've cited to 24 or 25 cases. The Board decides thousands of these every year, and it has to maintain the discretion to decide — Thousands of equitable tolling cases? Thousands of motions to reopen. I mean, there are any — Believe me, we're not getting our significant share of them for review here. But to my point, equitable tolling cases, they haven't decided thousands of equitable tolling cases. Similar to the circumstances we've got here. I'm just saying in the broader context of what the Board has to decide every year. Right. But I think — well, my point would be, and I think Judge Sullivan is asking what I think my point will be, which is it appears from what the — from the arguments that the BIA is deciding some cases one way and some cases another under similar circumstances following Harbin. And why should it not open up and treat everybody the same? And I would say that even regardless of what the different circuits are saying happen. I mean, we should have a national policy in this, should we not? That's why we turned to the Board to set that policy. Well, to the extent that the Court would like the Board to look at that policy, the Board should decide that in the first instance. If it's going — it doesn't have — there hasn't been a Board precedent decision issued addressing equitable tolling in circumstances other than ineffective assistance of counsel, as it issued in the matter of Lozada. So I would say if the Court wants further analysis from the Board on that issue, it could remand for the limited purpose of allowing the Board for — I mean, I admit that the Board's decision is rather brief in that regard. Yeah. I mean, it's completely conclusory. There might be good reasons to say that equitable tolling shouldn't be applied for an intervening change in case law. But it appears that, at least in some situations, the BIA has not followed that approach. And if that's the case, then isn't it incumbent upon the BIA to articulate why Andrews is treated differently, why he doesn't merit equitable tolling? It could do so, Your Honor. But I would just submit that in this case and the case law of this Court, there simply wasn't anything for the Board — I mean, Petitioner argued in his appeal that basically because of Harbin, his case should be reopened. Right. And four years later, I mean, with an alien who's already been deported from the United States, based on receiving all the process, he was due, there wasn't the kind of extraordinary impediment to him seeking timely relief, which is traditionally where equitable tolling comes in with respect to motions to reopen. And what this Court has said is that there has to be something that prevented — that prevents, in Valverde v. Stentzen, the Court said, something that prevents a person from completing a timely act. And what we submit is that to broaden that to saying that any time there's a change in law, the Board has to reopen the case, it's invading its discretion. Traditionally, the Board considers motions to reopen on the basis of intervening change in law under its sua sponte authority. And this Court, in a recent unpublished decision in 2015, said the fact that the Board might depart from established or alleged policies is within its discretion to do so. So, again, the Board has to look at these cases on a case-by-case basis, and there may be some inconsistencies, but the question is, is it arbitrary to say that after someone had received the process they were due, was lawfully removed from the United States, and then waited for four years until the law changed in their favor, is that the same? Sotomayor. The law didn't change, I think. The law was — we were told what the law always had been. It's just we were all applying it incorrectly. Right? Well, true. Including — including your client and this Court and — But that's different than a formative, like, misconduct or something that invaded the proceedings themselves that kept somebody from doing something timely. Look, I agree with you. There might be really good reasons not to apply equitable tolling in situations like this. I think there are strong arguments for it. Well, in other contexts — But it seems to me that it would be arbitrary if you are sometimes applying equitable tolling and sometimes not, with no explanation, when the facts are the same. That, I think, would be arbitrary. So I guess all we're saying is shouldn't we kick this back and give you an opportunity to articulate a reason, and then we can perhaps assess whether or not it was arbitrary or whether there is ever to be equitable tolling in a situation like this. I think Respondent would be comfortable with allowing the Board to make that decision in the first instance, but I think vacating and terminating is a bridge too far because the Board needs to be able to — I mean, you would be effectively hamstringing the Board in future cases. Anytime there's a fundamental change of law, a case has to be reopened. Mr. Schnitzer was reaching for the golden ring, and he may only get the brass one, and that seems to be something you might be comfortable with. We can live with that, Your Honor. Thank you. Thank you, Ms. Browning. Mr. Schnitzer, you're going to go for gold again? I will take what I can get, Judge Littleman. I would just like to make a couple of points addressing the government's arguments. First, I would note that at no point in these proceedings have they cited a single case, published or unpublished from the BIA, that actually denied — that actually under the framework adopted denied tolling for someone or said tolling should be denied for somebody who did what my client did. We've cited 24. As I'm sure you know, there are many BIA cases. Many of them are hard to find. They have access to all of them, presumably, and they have not provided a single example that goes the other way. Second of all, just as a — Look, you could — I mean, it seems to me that in the immigration context it might be one thing, but, you know, equitable tolling is applied across areas of law, and it's not usually the case that an intervening change of law or change — an intervening change of case law allows you to revive an appeal, for example, on a point you didn't even make when you had your initial appeal. There might be good reasons to not extend equitable tolling to a situation like this, don't you think? To your response to that, Your Honor, in this case, the Petitioner did make the exact argument that was then ultimately adopted by this Court in Harbin, and were the board or this Court reviewing the board as some policy set by the board in a more formal manner, one of — a possible consideration could be, and it would be reasonable to make that a criteria on the diligence prong, that they actually argued this point and preserved it during the earlier proceedings. That they have not required that date, but that would potentially be a way of doing it that might address some of their concerns and some of your concerns. Additionally, the Fourth Circuit and the Fifth Circuit have explicitly adopted this — have explicitly blessed the BIA's policy of doing this. In fact, encouraged the BIA, suggested that it needs to take this approach. We've cited some of those cases in our briefs. And, in fact — and this Court actually, in a case two weeks ago, went out of its way to suggest in the Kaye case, a summary disposition, I believe, Judge Sutherland, you were on the panel, that the board to — that what would be an untimely motion that the Court should go back, or that the Petitioner should go back and apply for cancellation of removal that had now become available, even though it would be untimely. If the Court has no further questions, we would ask that the Court grant the petition, reverse, and remand with instructions to reopen the proceedings and terminate. Thank you. Excuse me. Thank you, Mr. Schnitzer. Thank you, Ms. Browning. We'll reserve decision in this case.